IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LATROY HALL, #311568 | : |
|       Plaintiff, | : |
|     v. | : CIVIL ACTION NO. L-06-1798 |
| | : |
| MEDICAL DEPARTMENT | : |
|       Defendant. | : |

**MEMORANDUM**

Pending is Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Plaintiff's Opposition thereto. The issues have been fully briefed and no oral argument is necessary. See Local Rule 105.6. (D. Md. 2004). For the foregoing reasons, the Court will, by separate Order, GRANT Defendant's Motion for Summary Judgment.

**I.      Background**

Pro se plaintiff Latroy Hall ("Hall") alleges in this 42 U.S.C. § 1983 civil rights action for damages that prison nurse Wendy Koontz "gave me the wrong medication in my ear and now I have know [sic] hearing in my ear at all!" (Docket No. 1). Hall's Complaint names the Medical Department as defendant in the case.[1]

It is undisputed that in 2006 Hall complained of ear problems. The evidence presented by Defendant shows that Hall was examined and treated first for a build up of wax in his ears and later for an infection that developed in the canal in his left ear.

**II.      Standard**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

---

[1] The Clerk is directed to amend the docket to substitute the name of Correctional Medical Services, Inc. ("CMS") for that of Defendant "Medical Department."

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).  Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  See Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

**III.    Analysis**

Hall's constitutional claim is relatively straightforward.  He alleges that he was provided the wrong ear medication.  In order to succeed on his Eighth Amendment claim, Hall must prove the following two elements: (i) that he had a serious medical condition, and (ii) that Defendant knew that there was a risk of harm if the condition did not receive treatment, but nonetheless ignored that risk.

Hall cannot meet the first requirement.  He was diagnosed with a build up of wax in his ears and an infection in his left ear canal.   These medical problems did not, at the time he presented for treatment, rise to the level of severity required to support an Eighth Amendment claim.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).  A serious medical need is one that poses a substantial risk of serious injury to health and safety. See Young v. City of Mount Ranier, 238 F.3d 567, 576 (4th Cir. 2001).

Hall also fails to satisfy the second element. To state an Eighth Amendment medical indifference claim, a plaintiff must prove that the health care provider "knows of and disregards an excessive risk to inmate health and safety; the [healthcare provider] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Healthcare staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844; see also Johnson, 145 F.3d at 167.

Hall's complaints were not ignored. On May 9, 2006, Maryland Correctional Training Center medical personnel ordered ear wax drops, followed by irrigation of both ears, for five days. (Docket No. 10, Exs. A & B). On May 14, 2006, Hall submitted a sick-call request stating that he could not hear out of his left ear. (Id.). Physician's Assistant ("P.A.") Mac Payne examined Hall and noted a large amount of cerumen (ear wax) in Hall's left ear. (Id.). P.A. Payne continued Hall's ear wax removal drops. (Id.).[2]

On June 8, 2006, Nurse Christy Olanogani examined Hall's ears and found no wax in either ear.[3] (Id.). Hall submitted a sick-call form on July 27, 2006, complaining of pain in his left ear. (Docket No. 10, Exs. A & B). P.A. Payne examined Hall and observed that his left ear canal was erythematous (reddened). (Id.). Payne's assessment was that Hall had an infection of the ear canal (otitis externa) and he prescribed Cortisporin ear drops for each ear, three times a

---

[2]   In his papers, Hall states that he did not receive the full course of treatment. This factual dispute does not alter the outcome of this case. Hall's condition was not serious in a constitutional sense and was not ignored. (Docket No. 12).

[3]   In his Opposition, Hall claims that he also put in sick-call requests regarding his ear on May 13, May 20, and May 31, 2006, but these form requests are not noted by Defendant. (Docket No. 12).

day for nine days.  (Id.).  Hall was given one bottle of Cortisporin ear drops to keep with him and use as ordered.  (Id.).

On August 4, 2006, Hall submitted a sick-call request complaining about a "knot" on his right buttock.  (Id.).  He offered no complaints regarding his ear.  On August 5, 2006, Nurse Kenyon examined Hall's ears and found no abnormalities.  (Id.).   On August 10, 2006, however, Hall filed a sick-call request form complaining that the ear drops had not helped his ear problem.  (Id.).  He was scheduled for a P.A. sick-call visit.  (Id.).  On August 23, 2006, Hall submitted another sick-call request, complaining about a rash on his wrists.  (Id.)  He offered no complaints about his ears at that time.

The medical record shows that Hall presented with complaints that, while bothersome, did not appear to pose a substantial risk of serious harm.  CMS did not ignore Hall, but saw him for his complaints and gave him a reasonable course of evaluation, medication, and follow-up examinations.  It is regrettable that Hall's condition may have worsened.  It is even possible that CMS's treatment was negligent.  Simple negligence, however, is not actionable under the Eighth Amendment.[4]  The Court will, by separate Order, GRANT Defendant's Motion for Summary Judgment.

**IV.   Conclusion**

For the foregoing reasons, the Court will, by separate Order:

(i)      DIRECT the Clerk to AMEND the docket as so indicated;

---

[4]      The focus of Hall's Complaint and Opposition go to the allegation that on May 13, 2006, Nurse Koontz: (i) inadvertently gave him the wrong ear medication, causing his ear to burn and (ii) realized her mistake and then proceeded to flush out his ear. (Docket Nos. 1 & 12).  This allegation, alone, fails to set out an Eighth Amendment claim.  Inadvertent error, negligence, or even ordinary malpractice are insufficient grounds for invoking the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. at 105-106; Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996).  Riddle v. Mondragon, 83 F.3d 1197, 1203 (10th Cir. 1996).

    (ii)       GRANT Defendant's Motion for Summary Judgment;

    (iii)      ENTER judgment in favor of Defendant and against Hall; and

    (iv)      DIRECT the Clerk to CLOSE the case.

Dated this 9th day of February, 2007.

                                            /s/_____
                                            Benson Everett Legg
                                            Chief Judge